# THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| CENTER FOR PHLEBOTOMY EDUCATION INC., a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>DALLAS RASMUSSEN, an individual; OMPS, INC., a Utah corporation; OQUIRRH MOUNTAIN PHLEBOTOMY SCHOOL LLC- MURRAY fka OQUIRRH MOUNTAIN PHLEBOTOMY SCHOOL LLC, a Utah limited liability company; OQUIRRH MOUNTAIN PHLEBOTOMY SCHOOL LLC, a Colorado limited liability company; and OQUIRRH MOUNTAIN PHLEBOTOMY SCHOOL LLC, an Oregon limited liability company,<br><br>Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART [20] DEFENDANTS' MOTION TO DISMISS**<br><br>Civil No. 2:25-cv-00052<br><br>Judge David Barlow |

Before the court is a motion to dismiss filed by Defendants Dallas Rasmussen ("Rasmussen"), OMPS, Inc. ("OMPS, Inc."), Oquirrh Mountain Phlebotomy School LLC- Murray fka Oquirrh Mountain Phlebotomy School LLC (Utah) ("OMPS – Utah"), Oquirrh Mountain Phlebotomy School LLC (Colorado) ("OMPS – Colorado"), Oquirrh Mountain Phlebotomy School LLC (Oregon) ("OMPS – Oregon") (OMPS Inc., OMPS – Utah, OMPS – Colorado and OMPS – Oregon collectively referred to as the "OMPS School" or "OMPS") (Rasmussen and OMPS School collectively referred to as "Defendants").[1] For the reasons that follow, the motion is granted in part and denied in part.

---

[1] Defs.' Mot. to Dismiss ("Mot."), ECF No. 20, filed May 9, 2025.

## BACKGROUND[2]

Plaintiff Center for Phlebotomy Education Inc. ("Plaintiff" or "The Center") provides educational resources and phlebotomy training to consumers through videos and other sources.[3] One such resource is its popular "Applied Phlebotomy" educational video series (the "Training Videos").[4] Plaintiff's Training Videos are available for sale as DVDs or through streaming on Plaintiff's website.[5] Plaintiff claims to own copyright registrations for its Training Videos (Video Nos. 1-3).[6]

The OMPS School offers and provides phlebotomy training courses.[7] Plaintiff alleges that Defendants unlawfully copied and distributed Plaintiff's Training Videos for use in the OMPS School's training courses.[8] Plaintiff further alleges that Defendants perform Plaintiff's Training Videos from these unlawful copies.[9] These Training Videos are an important component of Defendants' phlebotomy training courses, accounting for more than 1/6th of class time.[10] Defendants posted on their website the comment of a student review, which states, among other things, that Defendants' course's "videos were very informative and the tests given afterwards reinforced what was taught in the video."[11]

Plaintiff initiated the instant action against Defendants on January 22, 2025,[12] and filed an Amended Complaint ("FAC") on April 18, 2025.[13] On May 9, 2025, Defendants moved to

---

[2] At the motion to dismiss stage, the court accepts the complaint's well-pled factual allegations as true and views those facts in the light most favorable to the nonmoving party. *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).
[3] Am. Compl. ("FAC") ¶ 24, ECF No. 20, filed May 9, 2025.
[4] *Id.* ¶ 25.
[5] *Id.* ¶ 28.
[6] *Id.* ¶¶ 26–27.
[7] *Id.* ¶¶ 33–34.
[8] *Id.* ¶¶ 41–51.
[9] *Id.* ¶¶ 6, 10, 42–51.
[10] *Id.* ¶ 61.
[11] *Id.* ¶ 62.
[12] Compl., ECF No. 1.
[13] FAC, ECF No. 16.

dismiss.[14] On June 6, 2025, Plaintiff filed an Opposition.[15] On July 3, 2025, Defendants filed a Reply.[16]

## LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[17] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[18] But the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[19]

## DISCUSSION

Defendants move to dismiss Plaintiff's FAC, arguing that (i) they are authorized to use the Training Videos under the first sale doctrine (Claims I – III); (ii) Plaintiff did not plausibly plead that Rasmussen has a direct financial interest in the alleged infringement (Claim II); and (iii) Plaintiff's claim under the Digital Millenium Copyright Act is conclusory and fails to allege any damages (Claim IV). The court considers each argument in turn.

### I.    FIRST SALE DOCTRINE

"Ordinarily, there are two elements to a claim for liability for copyright infringement. A plaintiff must show (1) he owns a valid copyright to the allegedly infringed work, and (2) the defendant violated one of his exclusive rights as copyright owner."[20] However, the first sale

---

[14] Mot., ECF No. 20.
[15] Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 21.
[16] Defs.' Reply in Support of Mot. to Dismiss ("Reply"), ECF No. 26.
[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[18] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[20] *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013).

doctrine allows the owner of a "particular copy" of a copyrighted work "to sell or otherwise dispose of the possession of that copy."[21] "Under the first sale doctrine, 'the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.'"[22]

Defendants do not challenge that Plaintiff owns a valid copyright to the Training Videos. Instead, Defendants state that because they lawfully purchased a copy of the Training Videos from Plaintiff in 2013,[23] the first sale doctrine allows them to use these purchased videos in its training courses.[24] Whether Defendants lawfully purchased a copy of the Training Videos is not contained in the four corners of the FAC. Defendants instead attach as an Exhibit to their Motion an email purportedly from Plaintiff thanking Defendants for their "recent order" and providing the answer keys for three videos.[25] Plaintiff points out that the email references "answer keys," and says nothing about a purchase of the videos themselves.[26] In response, Defendants attach to their Reply a bank receipt for a $718.00 purchase from Plaintiff.[27] This receipt does not specify what the payment was for, and Defendants do not provide any evidence linking the cost of the payment to the cost of Plaintiff's Training Videos. As such, the court could simply disregard the documents. Notwithstanding, because the end result is the same, the court will assume that Defendants lawfully purchased a copy of the Training Videos in 2013.

Plaintiff does not allege that Defendants are selling unauthorized copies of the Training Videos.[28] Instead, Plaintiff alleges that Defendants unlawfully made copies of the Training

---

[21] 17 U.S.C. § 109(a); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 363 (2017).
[22] *Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-cv-00748-DAK, 2019 WL 2568010, at *4 (D. Utah June 21, 2019) (quoting *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240–41 (10th Cir. 2006)).
[23] Mot. 2–3, 6, 9–10.
[24] *Id.* at 8–10.
[25] *See* Email Receipt, ECF No. 20-1, filed May 9, 2025.
[26] Opp'n 2, 6, 9.
[27] *See* Bank Receipt, ECF No. 26-1, filed July 3, 2025.
[28] Opp'n 5 n.3.

Videos and "unlawfully distributed [these] unauthorized copies . . . amongst themselves for use in OMPS classes."[29] Defendants respond that "[e]ven if the OMPS School did make copies of the lawfully acquired works, because it did not sell or distribute such purported copies to any third parties, it did not engage in any acts that would violate Plaintiff's alleged copyright."[30]

The court disagrees. The first sale doctrine does not allow the owner of a lawful copy of a copyrighted work to make or distribute another copy.[31] After all, the first sale doctrine by its plain terms only encompasses *distribution* of the copyrighted work (as opposed to copying), and is also subject to 17 U.S.C. § 106(3), which provides that the owner of a copyright has the exclusive rights "to distribute copies . . . of the copyrighted work to the public."[32]

Defendants point to caselaw stating that "[u]nder the first sale doctrine, 'once a copyright owner consents to the sale of particular copies of work, that owner cannot later claim infringement for distribution of those copies.'"[33] But this cited excerpt, as well as the statute itself, refers to the distribution of the "particular copies" purchased. It does not refer to copies of the purchased works.[34]

---

[29] *Id.* at 5 n.3, 7; *see also* FAC ¶¶ 6, 10, 42–51.
[30] Reply 4.
[31] *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 794 (5th Cir. 2017) ("Section 109 by its plain terms limits only the exclusive right to distribute. The owner of a lawfully made copy or phonorecord is still forbidden from copying it, preparing derivative works based on it, publicly performing it, or publicly displaying it, any of which would violate one of the copyright owner's other exclusive rights (absent some other limitation or defense)."); *Clean Flicks of Colorado, LLC v. Soderbergh*, 433 F.Supp.2d 1236, 1242 (D. Colo. 2006) ("The counterclaim defendants assert the 'first sale' doctrine as another affirmative defense. That doctrine protects the purchaser in any use of the authorized copy acquired but does not permit the making of additional copies."); *see also* 17 U.S.C. § 106(a) (stating that the owner of a copyright has the exclusive rights "to reproduce the copyrighted work in copies").
[32] 17 U.S.C. § 106(3); *see also id.* § 109 ("Notwithstanding the provisions of section 106(3) . . .").
[33] Reply 4 (citing *Black v. De Rose*, Case No. 1:24-cv-00550-KES-EPG, 2025 WL 471228, *3 (E.D. Cal. Feb. 12, 2025)).
[34] Defendants point out that one of Plaintiff's cited cases arising out of the District of Colorado noted that the plaintiff did not assert that the use of a lawfully acquired copy in making a master copy is an infringement. Reply 5 (citing *Clean Flicks of Colorado, LLC*, 433 F. Supp. 2d at 1242). Instead, the plaintiff asked the court to prevent the use of that master copy in creating copies that are distributed to the public. *Id.* While true, this does not mean that making a copy of the copyrighted work that is not distributed to the public is not infringement. It just means the plaintiff did not argue the issue. In fact, the court specifically stated that the first sale doctrine "does not permit the making of additional copies." Additionally, Defendants did not attempt to distinguish the Fifth Circuit's opinion that

Additionally, Defendants have not met their burden to show that copies were not distributed to the public. To be clear, Plaintiff does not allege that Defendants distributed copies outside of the OMPS School.[35] But, although Defendants (and the court) refer to the singular "OMPS School," it is made up of multiple, legally distinct entities. Defendants do not state who specifically purchased the Training Videos—presumably Rasmussen or one of the OMPS schools. Even if using multiple copies of the Training Videos in a single school/location did not constitute distribution to the public, Defendants provide no authority suggesting that distributing copies of the Training Videos to distinct entities under the OMPS umbrella would not constitute public distribution in further violation of Plaintiff's copyright.

As such, the court finds that Plaintiff has plausibly pled copyright infringement through both copying the Training Videos and distributing the copies to the public.

## II.  VICARIOUS LIABILITY AGAINST RASMUSSEN

For purposes of copyright law, "[v]icarious liability attaches when the defendant 'has the right and ability to supervise the infringing activity' and 'has a direct financial interest in such activities.'"[36] Defendants challenge whether the FAC sufficiently alleges that Rasmussen has a "direct financial interest" in the infringing activities.[37]

"[T]he crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant."[38] "But in every case, the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability."[39]

---

"[t]he owner of a lawfully made copy or phonorecord is still forbidden from copying it." *Geophysical Serv., Inc.*, 850 F.3d at 794. This conclusion appears clear from the plain text of the statute. *See* 17 U.S.C. §§ 106, 109.
[35] Opp'n 5 n.3, 7.
[36] *Diversey*, 738 F.3d at 1204.
[37] Mot. 11–14.
[38] *Sony Music Entertainment v. Cox Communications, Inc.*, 93 F.4th 222, 231–32 (4th Cir. 2024).
[39] *Id.* at 232.

Defendants cite to the Fourth and Ninth Circuits, in addition to courts in this circuit, to argue that vicarious liability exists where the availability of infringing material acts as a "draw" for customers.[40] Plaintiff assumes *arguendo* that the law requires the infringement to be a draw but notes that "[n]either of the two Tenth Circuit cases reciting the requirements for vicarious liability require the infringement to be 'a draw.'"[41] Of course, neither case analyzed or expanded upon the direct financial interest element at all.[42] As such, the court concludes, at least at this juncture, that the availability of infringing material must constitute a draw for customers, not just an added benefit. But it need only be *an* attracting factor, not *the* attracting factor.[43]

The FAC alleges that OMPS has posted on its website the comment of a student, which reads:

> The phlebotomy course was perfect! Dallas gave us the confidence we needed to actually do draws the first day. I loved the atmosphere in the class and the hands on experience. Everything was discussed in a group setting and there was never a need to feel embarrassed to ask a question. The class size was perfect and everyone was at the same level. *The videos were very informative* and the tests given afterwards reinforced what was taught in the video. All in all I would definitely encourage anyone considering taking a phlebotomy class to go with OQUIRRH MOUNTAIN PHLEBOTOMY to get your certification.[44]

Plaintiff argues that this allegation—namely its reference to "videos" being "very informative," is sufficient for the court to infer that the Training Videos constitute a draw for OMPS' customers.[45] The comment does not specify whether the videos are Plaintiff's copyrighted material, as opposed to other videos shown in OMPS' phlebotomy class. Drawing all reasonable inferences in a light most favorable to Plaintiff, it is plausible that the referenced

---

[40] *Id.* at 231–32; *Tomelleri v. Zazzle, Inc.*, No. 13-cv-02576-EFM-TJJ, 2015 WL 8375083, at *15 (D. Kan. Dec. 9, 2015) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)).
[41] Opp'n 8.
[42] *Diversey*, 738 F.3d at 1204; *Greer v. Moon*, 83 F.4th 1283, 1287 (10th Cir. 2023).
[43] *See Warner Recs. Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069, 1074 (D. Colo. 2020) (concluding that availability of the infringing material act must be an attracting factor).
[44] FAC ¶ 62.
[45] Opp'n 8–9.

videos are the Training Videos. The FAC does not reference any other videos shown by OMPS in its class. Additionally, the comment's reference to tests that reinforced what was taught in the video aligns with Defendants' email receipt referencing answer keys to the videos.[46]

Defendants also argue that the review cannot serve as a plausible basis "for dragging Rasmussen into this lawsuit."[47] In Defendants' view, the review simply comes from "a single third party—not the OMPS School," so it is not enough to serve as a draw.[48] But it is one or more of the Defendants that selected the review and included it on the OMPS website. At the motion to dismiss stage, the court draws all reasonable inferences in Plaintiff's favor. It is reasonable to infer that some customers review the OPMS website before signing up for OPMS' classes. It is also reasonable to infer that Defendants selected the review in question because they felt it would serve as a draw for their classes. Therefore, it is plausible that some customers saw the review OPMS placed on its website and were influenced by it. That the alleged connection might be weak and prove insufficient at a later stage does not change the analysis here. As such, the court concludes that the FAC, together with reasonable inferences drawn in favor of Plaintiff, plausibly alleges the Training Videos constitute a draw for some of OMPS' customers.

### III.   DMCA CLAIM AGAINST RASMUSSEN

Defendants argue that Plaintiff fails to state a claim against Rasmussen for violation of § 1201 of the Digital Millenium Copyright Act ("DMCA") because the claim is conclusory and fails to allege any damages.[49] The DCMA provides in pertinent part that "[n]o person shall circumvent a technological measure that effectively controls access to a [copyrighted] work."[50]

---

[46] *See* Email Receipt, ECF No. 20-1.
[47] Reply 8.
[48] *Id*.
[49] Mot. 14–15.
[50] 17 U.S.C. § 1201(a)(1).

Defendants state that the allegation is conclusory because "Plaintiff's only relevant allegation regarding circumvention" states:

> On information and belief, in making unauthorized reproductions of [the Training Videos], Rasmussen unlawfully circumvented the Content Scramble System ("CSS") encryption of one or more copies of the Plaintiff's Applied Phlebotomy video series on DVD, in violation of the Digital Millenium Copyright Act ("DMCA"), Section 17 U.S.C. § 1201(a)(1), which provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."[51]

However, Plaintiff's claim incorporates by reference its earlier allegations that (i) it owns a copyright on its Training Videos;[52] (ii) the Training Videos are available for purchase and are distributed via DVD and through online streaming;[53] (iii) Rasmussen "makes unlawful copies" of the Training Videos;[54] and (iv) in making these unlawful copies, Rasmussen "used software tools" to "unlawfully circumvent[] the Content Scramble System ('CSS') encryption of one or more copies of the Plaintiff's [Training Videos] on DVD.[55] This is not conclusory.

In Reply, Defendants focus on Plaintiff's allegation that "Rasmussen used software tools to unlawfully circumvent the CSS encryption of one or more copies of the Plaintiff's Applied Phlebotomy video series on DVD."[56] They argue that the allegation is insufficient because it is alleged "on information and belief," which must be supported by factual allegations sufficient to form such a belief.[57] While true, drawing all reasonable inferences in the light most favorable to Plaintiff, Plaintiff has plausibly pled that the DVDs were encrypted to prevent making copies, yet Rasmussen was still able to make copies. As such, it is reasonable to infer that he circumvented the encryption to do so.

---

[51] Mot. 14 (citing FAC ¶ 114).
[52] FAC ¶¶ 26–27, 57, 111–112.
[53] *Id.* ¶¶ 3, 7, 28.
[54] *Id.* ¶¶ 6, 48–49, 53, 113.
[55] *Id.* ¶¶ 7, 114, 116.
[56] Reply 9–10.
[57] *Id.*

Lastly, Defendants argue that Plaintiff fails to allege any damages suffered in connection with any purported violation of DMCA § 1201.[58] Plaintiff responds that it has adequately alleged an injury because the FAC alleges that: Plaintiff is in the business of providing phlebotomy training,[59] the Training Videos are among its most popular educational resources,[60] the Training Videos are available for purchase,[61] Plaintiff owns a registered copyright in the Training Videos,[62] Rasmussen "makes unlawful copies" of the Training Videos;[63] and in doing so, Rasmussen used software tools to unlawfully circumvent the Training Videos' encryption.[64]

Plaintiff states that it is "common sense" that if Plaintiff sells copies of the Training Videos and Rasmussen buys one copy and creates additional copies for use in OMPS classes, Plaintiff "has been injured at the very least by a loss of DVD sales that it would otherwise have made."[65] This may be true, but Plaintiff still needs to adequately plead the injury. Doing so in an Opposition brief is insufficient.

Plaintiff also points to allegations that it "has suffered injury" and "irreparable harm" and seeks a judgment that it is entitled to "(a) statutory damages or (b) its actual damages and a disgorgement of the Defendants' profits that (i) are attributable to their infringement of [Plaintiff's] copyrights and (ii) are not taken into account in computing the actual damages."[66] However, nearly all of these harms are alleged to be attributed to copyright infringement, not

---

[58] Mot. 15.
[59] FAC ¶ 2.
[60] *Id.* ¶ 3.
[61] *Id.* ¶ 28.
[62] *Id.* ¶¶ 26–27, 57, 111–112.
[63] *Id.* ¶¶ 6, 48–49, 53, 113.
[64] *Id.* ¶¶ 7, 114, 116; Opp'n 12–13.
[65] Opp'n 13.
[66] FAC ¶¶ 8, 71, 73, 88, 90, 107, 109, p. 32.

violation of the DMCA.[67] The only allegation of harm not specifically attributable to copyright infringement is in the "Parties" section, where Plaintiff alleges that it "does business in the District of Utah and has suffered injury in the District of Utah."[68] This conclusory allegation is insufficient to plausibly plead injury based on the alleged DMCA violation.

As such, Plaintiff's DMCA claim is dismissed for failure to allege an injury.

## ORDER

The court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.[69] The motion is DENIED as to Claims I, II and III. The motion is GRANTED as to Claim IV. The court DISMISSES Claim IV without prejudice.

Signed August 5, 2025.

BY THE COURT

David Barlow
United States District Judge

---

[67] *See, e.g., id.* ¶ 71 ("Because of Defendants' infringing and wrongful acts of copyright infringement, . . ."), *id.* ¶ 73 ("Defendants' infringement has caused and continues to cause irreparable harm . . ."); *see also id.* ¶ 110 (only incorporating by reference paragraphs 1 to 63 of the FAC in support of DMCA claim).
[68] *Id.* ¶ 8.
[69] ECF No. 20; *see also* 17 U.S.C. § 1203(a) ("Any person injured by a violation of section 1201 or 1202 may bring a civil action . . . .").